F I L E D
**United States Court of Appeals**
**Tenth Circuit**

**May 23, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ALFREDO RICALDAY-LARES,

     Petitioner,

v.

ALBERTO R. GONZALES, United
States Attorney General,

     Respondent.

No. 06-9552

(Agency No. A76-384-734)
(Petition for Review from an Order of
The Board of Immigration Appeals)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE, EBEL,** and **HARTZ**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to honor the parties' request for a decision on the briefs without oral

argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is, therefore,

ordered submitted without oral argument.

Alfredo Ricalday-Lares (Ricalday), a Mexican citizen, petitions for review of an

order issued by the Board of Immigration Appeals (BIA) denying his motion to reopen

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

removal proceedings initiated against him. Finding no abuse of discretion on the part of the BIA, we deny Ricalday's petition for review.

I.

Ricalday was born on March 18, 1972, in Mexico. He illegally entered the United States for the first time on February 1, 1989, near San Ysidro, California. In 1991, Ricalday's father filed an immigrant visa petition on Ricalday's behalf. That petition was approved on April 9, 1991, and qualified Ricalday under the Family Second Preference category as the child of a lawful permanent resident alien. 8 U.S.C. § 1153(a)(2) (authorizing visas to be granted to unmarried sons and daughters of permanent resident aliens).

On September 17, 1998, Ricalday applied to the Immigration and Naturalization Service (INS) for adjustment of status to lawful permanent resident under INA § 245(i). In January 1999, before Ricalday's application was ruled upon, Ricalday left the United States to visit his sister in Mexico. He remained in Mexico for approximately twenty days and then attempted to return to the United States on February 17, 1999. Ricalday falsely told INS officials at the border that his name was Armando Rios Aguilar and that he was an American citizen. These falsehoods were immediately discovered and Ricalday was determined to be inadmissible to the United States for having made an oral false claim to United States citizenship. Accordingly, he was immediately returned to Mexico pursuant to the expedited removal provisions of INA § 235(b)(1), 8 U.S.C. § 1225(b)(1). Ricalday waited in Mexico for two days and then reentered the United States

-2-

without inspection on February 19, 1999. After his illegal reentry, Ricalday joined his children and their mother in Denver, Colorado.

On July 7, 1999, the INS District Director in Denver denied Ricalday's application for adjustment of status to permanent resident. Unaware at that time of Ricalday's February 17, 1999 expedited removal, the District Director denied the application on the ground that Ricalday was not eligible for the benefits of the petition filed by his lawful permanent resident father because, in the District Director's view, Ricalday's relationship with the mother of his children amounted to common-law marriage and, as a married person, Ricalday was ineligible for Family Second Preference status. 8 U.S.C. § 1255(a) (authorizing adjustment of status only for those aliens who, at the time of the application for adjustment of status, are eligible to receive an immigrant visa).

On the same date as the District Director's denial (July 7, 1999), the INS initiated removal proceedings against Ricalday by issuing a notice to appear charging Ricalday with being an alien who entered the United States without inspection. Ricalday appeared in the removal proceedings and admitted he was subject to removal as charged. However, Ricalday asked the immigration judge (IJ) to consider anew his application for adjustment of status to permanent residence under Section 245 of the INA. Ricalday also submitted an application for cancellation of removal for nonpermanent resident pursuant to INA Sec. 240A(b)(1) and, in the alternative, he requested voluntary departure.

The IJ, after conducting evidentiary hearings, issued a written decision on July 3, 2003, denying relief to Ricalday. The IJ concluded that Ricalday's expedited removal on

February 17, 1999, rendered him inadmissible pursuant to INA Section

212(a)(9)(C)(i)(II), 8 U.S.C. § 1182(a)(9)(C)(i)(II). Relatedly, the IJ concluded that

Ricalday was ineligible for a waiver of that ground of inadmissibility (in part because a

period of ten years had not passed since the expedited removal). The IJ further concluded

that Ricalday was ineligible for cancellation of removal under INA Section 240A(b)(1)

because he had not been physically present in the United States for a continuous period of

ten years or more immediately preceding the date of his application (because of his trip to

Mexico in early 1999). Finally, the IJ concluded that Ricalday was ineligible for a grant

of voluntary departure because he could not establish that he had been physically present

in the United States for a period of at least one year immediately preceding the date the

notice to appear was served on him (i.e., July 7, 1999).

On July 31, 2003, Ricalday filed a notice of appeal from the IJ's decision. The

BIA issued a written decision affirming the IJ's conclusions and denying Ricalday's

appeal on January 31, 2005.

On January 12, 2006, Ricalday, who was still present in the United States, filed a

motion to reopen. In support of his motion, Ricalday cited to this court's October 18,

2005, decision in Padilla-Caldera v. Gonzales, 453 F.3d 1237 (10th Cir. 2005) (holding

that the Legal Immigration Family Equity Act, 8 U.S.C. § 1255, afforded the Attorney

General discretion to adjust the status of an alien who had been deemed inadmissible

pursuant to 8 U.S.C. § 1182(a)(9)(C)(i)(I) for having illegally reentered the United States

after having been unlawfully present in this country for an aggregate period of more than

a year). On April 27, 2006, the Board of Immigration Appeals (BIA) issued an order denying Ricalday's motion to reopen. In doing so, the BIA noted that the motion was filed out of time. Further, the BIA declined to exercise its sua sponte authority to reopen, concluding that the decision in Padilla-Caldera did not apply to Ricalday's case.

II.

On appeal, Ricalday challenges the BIA's denial of his motion to reopen. "We [have] jurisdiction to consider the BIA's denial of [Ricalday]'s motion to reopen the proceedings" because "[i]t is considered a final, separately appealable order." Infanzon v. Ashcroft, 386 F.3d 1359, 1361 (10th Cir. 2004). We review the BIA's decision for abuse of discretion. Id. at 1362. "The BIA abuses its discretion when its decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements." Id. (internal quotation marks omitted).

The reopening of cases by the BIA is governed by 8 C.F.R. § 1003.2. That regulation provides, in pertinent part, as follows:

> (a) General. The Board may at any time reopen . . . on its own motion any case in which it has rendered a decision. A request to reopen . . . any case in which a decision has been made by the Board, which request is made by the Service, or by the party affected by the decision, must be in the form of a written motion to the Board. The decision to grant or deny a motion to reopen . . . is within the discretion of the Board, subject to the restrictions of this section. The Board has discretion to deny a motion to reopen even if the party moving has made out a prima facie case for relief.
>
> * * *

(c) Motion to reopen.

> (1) A motion to reopen proceedings shall state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits or other evidentiary material. A motion to reopen proceedings for the purpose of submitting an application for relief must be accompanied by the appropriate application for relief and all supporting documentation. A motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing . . . .

> (2) * * * [A]n alien may file only one motion to reopen removal proceedings (whether before the Board or the Immigration Judge) and that motion must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened.

8 C.F.R. § 1003.2(a), (c).

Applying these regulatory provisions to the circumstances at issue in this case, it is beyond dispute that Ricalday's motion to reopen was untimely. As previously noted, the BIA issued its final written decision on January 31, 2005. Under 8 C.F.R. § 1003.2(c)(2), Ricalday had ninety days, or until approximately April 30, 2005, to file a motion to reopen. He did not, however, actually file his motion to reopen until January 12, 2006, more than eight months after the 90-day deadline had expired. Thus, the BIA did not abuse its discretion in concluding that Ricalday's motion was untimely.

The petition for review is DENIED.

Entered for the Court


Mary Beck Briscoe
Circuit Judge